**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

    **Plaintiff**,

           **v.**                     **Criminal No.** 18-389 (FAB)

LUIS PÉREZ-GREAUX,

    **Defendant.**

**OPINION AND ORDER**

BESOSA, District Judge.

    Before the Court is defendant Luis Pérez-Greaux ("Pérez-Greaux" or "defendant")'s motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. (Docket No. 240.)  For the reasons set forth below, Pérez-Greaux's Rule 29 motion, <u>id.</u>, is **DENIED**.

**I.  Background**

    In reviewing a motion for judgment of acquittal, courts "consider[] the evidence in the light most favorable to the prosecution." <u>United States v. Lara</u>, 181 F.3d 183, 200 (1st Cir. 1999) (citations omitted); <u>see</u> <u>United States v. Rodríguez-Marrero</u>, 390 F.3d 1, 6 (1st Cir. 2004).  Rule 29 motions require a court to "take into account all evidence, both direct and circumstantial, and resolve evidentiary conflicts and credibility disputes in favor of the jury's verdict." <u>United States v. Valerio</u>, 676 F.3d

237, 244 (1st Cir. 2012).  At the same time, the court "must 'reject those evidentiary interpretations and illations that are unreasonable, insupportable, or overly speculative.'"  United States v. Rodríguez-Martínez, 778 F.3d 367, 371 (1st Cir. 2015) (quoting United States v. Spinney, 65 F.3d 231, 234 (1st Cir. 1995)).

On June 5, 2018, a grand jury charged Pérez-Greaux with five counts.  (Docket No. 71 at p. 1.)  Count one charged possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. section 924(c)(1)(A).  Id.  Count two charged possession of a machinegun in furtherance of a drug trafficking crime in violation of 18 U.S.C. section 924(c)(1)(A) and section 924(c)(1)(B)(ii).  Id. at p. 2.  Count four charged possession with intent to distribute controlled substances in violation of 21 U.S.C. section 841(a)(1).  Id. at p. 3.  Two other counts were dismissed at the government's request.  (Docket No. 202.)

Trial was held between October 15 and October 18, 2019. (Docket Nos. 222, 223, 227, 230.)

According to the testimony at trial, on May 30, 2018, José Rivera-Vélez ("Rivera"), a member of the Puerto Rico Police Department, began a three-day surveillance of Pérez-Greaux's residence.  (Docket No. 250 at pp. 28-29, 33-35.)  Pérez-Greaux's

residence is in the Los Pinos I subdivision in Arecibo, Puerto Rico.  Id. at pp. 31, 54.

On June 1, 2018, Rivera saw Pérez-Greaux with a black pistol in his waistband.  Id. at pp. 36-37.  Rivera then investigated and discovered that Pérez-Greaux did not have a license to legally carry a firearm.  Id. at p. 38.

On June 5, 2018, Carlos Pérez-Carrasco ("Pérez-Carrasco") and his colleagues executed a search warrant at Pérez-Greaux's residence.  Id. at pp. 53-54.  Pérez-Carrasco also works for the Puerto Rico Police Department.  Id. at p. 53.

When Pérez-Carrasco first saw the defendant, the defendant was setting up a pool.  Id. at p. 55.  After Pérez-Carrasco told the defendant that there was a search warrant against him and his residence, the defendant told Pérez-Carrasco not to harm his family and that he would hand over the property inside the residence. Id.  The defendant indicated that the property was cocaine inside a safe.  Id. at pp. 14, 55.  The defendant told the law enforcement officers where the drugs were located from the very beginning. Id. at p. 25.  The defendant knew it was cocaine inside the safe because it was given to him by a person known to the defendant to be a drug dealer.  Id. at p. 14.  This person's name was Alex. Id. at p. 15.  The defendant met Alex on trip to Rochester, New York.  Id.

The defendant took Pérez-Carrasco to the safe.  Id. at p. 55.
The safe was in his bedroom.  Id.  The defendant had to, and did,
open the safe with a passcode.  Id. at p. 56.  Inside the safe
were three kilograms of cocaine, a scale, and periodicals about
firearms.  Id. at pp. 56, 63, 75; see Docket No. 251 at p. 33.

The defendant told Juan Carlos Miranda ("Miranda"), a federal
law enforcement special agent, that he had been working as a drug
trafficker since March or April of 2018. (Docket No. 250 at pp. 3,
18.)  He further explained that he would wrap the cocaine in carbon
paper, vacuum seal the drugs, place the drugs into small boxes
along with toys and other items, and mail the boxes to the
continental United States via the United States Postal Service.
Id. at p. 18.  The defendant confirmed that Alex was the same
person to whom he would send drugs in the continental United
States.  Id. at p. 20.

After the defendant opened the safe, he told Pérez-Carrasco
about a firearm in the closet of his children's bedroom.  Id. at
p. 26; Docket No. 251 at p. 16.  The defendant did not volunteer,
and the law enforcement officers did not ask, for what purpose the
defendant was using the weapon.  (Docket No. 250 at p. 26.)

In the closet Pérez-Carrasco recovered a firearm, ammunition,
and five ammunition magazines, including one high capacity
magazine.  Id. at pp. 62, 70-71.  The firearm, ammunition, and

magazines were wrapped in a cloth within two paper bags, all of which was inside a plastic bag. (Docket No. 251 at pp. 18-20.) The firearm did not have a magazine attached to it, the magazines were empty, and the ammunition was inside another bag. Id. at p. 20.

Pérez-Carrasco had a little trouble getting the firearm out of the closet. (Docket No. 250 at p. 76; Docket No. 251 at p. 18.) He is five feet, six inches tall, and needed to raise his arm above his head to recover the firearm. (Docket No. 250 at pp. 62, 76.) The firearm seems to have been located on the top shelf of the closet, either on top of a carboard box or behind it. Id. at p. 15; Docket No. 251 at p. 18.

The firearm was a machinegun. (Docket No. 251 at pp. 25-26.) It was modified to fire automatically. Id. at p. 26. Jeffrey T. Browder, a firearms expert, was able to identify that the firearm was a machinegun by looking at it. Id. at pp. 24-30.

Pérez-Carrasco did not know whether the machinegun, ammunition, or magazines were tested for fingerprints. Id. at p. 21. He did not find other materials associated with firearms in the residence, including ammunition, a solution for cleaning the weapon, a rod to clean the barrels, and a cleaning kit for firearms. Id.

The defendant told Miranda that, a few days earlier in Isla Verde, Puerto Rico, Alex gave to the defendant the firearm found in the children's bedroom closet and the cocaine found in the safe. (Docket No. 250 at pp. 15-16.)  Alex told the defendant, "Here is a short one with a couple of beans.  Just hold on to that while I come back."  Id. at p. 17.  The firearm, according to the defendant's statements to Miranda, was for Alex's protection.  Id. When he was speaking with Miranda, the defendant was aware of the ammunition and the magazines.  Id. at pp. 16-17.

Later, the defendant changed his story.  Id. at p. 19.  He told Miranda that he was given the firearm by a friend of his from Guaynabo, Puerto Rico.  Id.  The defendant stated that he was very afraid of this friend.  Id.

In the defendant's bedroom, Pérez-Carrasco also seized five cellphones.  Id. at p. 73.  The cellphones contained numerous images, including those of packages sent to Rochester and associated receipts, toys and carbon paper, a "selfie" of the defendant, a white substance in brick shapes wrapped in cellophane, a bundle of currency, and a money transfer.  (Docket No. 251 at pp. 51-60.)  One of the cellphones also had a contact listing for a person identified as "A" with an area code from Rochester, New York.  Id. at p. 62.  There were also text messages or images of

text messages that appear to relate to drug trafficking.  Id. at
pp. 63-70.

     The person who extracted the photos, images, and messages
from the cellphones—Matthew Johnson—was unable to determine who
took the photos, who deleted some of the photos, and who used the
phone.  (Docket No. 252 at pp. 18-19.)  He was also unable to
identify both the contents of the packages shown in the pictures
and the packages associated with the shipping receipts and tracking
information.  Id. at pp. 20-21.  Additionally, Matthew Johnson
acknowledged that images of text messaging conversations could
have been sent to the cellphones rather than originating on the
phone.  Id. at p. 22.  And he did not see on the cellphones photos
of guns or gun-related searches.  Id. at pp. 22-23.

     The law enforcement officers also seized or identified other
items.  A holster designed to carry a weapon was seized somewhere
in the residence.  (Docket No. 250 at p. 73.)  They also found a
box with an address and postage stamp in the residence.  (Docket
No. 251 at pp. 10-11.)  The box was addressed to Alex at an address
in Rochester, New York.  (Docket No. 250 at p. 16.)  The box had
toys and other items inside.  (Docket No. 251 at p. 11.)  The
officers found other boxes tied together in the children's closet.
(Docket No. 251 at pp. 10-11.)

Pérez-Carrasco and his colleagues were accompanied by a canine. (Docket No. 250 at p. 58.) According to Pérez-Carrasco, the canine was trained to search for drugs and firearms. Id. The canine "marked" three locations in the residence. Id. at p. 60. The canine marked at the safe in the bedroom, drawers in the bedroom, and the closet in the children's bedroom. Id. The law enforcement officers found approximately $600 in the drawers. Id.

The jury found Pérez-Greaux guilty of counts one, two, and four. (Docket No. 233.)

## II.  Rule 29 Legal Standard

A court may set aside a jury's guilty verdict and enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. See Fed. R. Crim. P. 29(c). The burden of making the requisite showing falls on the defendant. United States v. Polanco, 634 F.3d 39, 45 (1st Cir. 2011).

A challenge to the sufficiency of the evidence challenge is "a tough sell," id., "an uphill battle," United States v. Pérez-Meléndez, 599 F.3d 31, 40 (1st Cir. 2010) (internal quotation marks omitted), and a "daunting hurdle[]," United States v. Hatch, 434 F.3d 1, 4 (1st Cir. 2006) (internal quotation marks omitted). Courts uphold a jury's guilty verdict "unless the evidence is so scant that a rational factfinder could not conclude that the government proved all the essential elements of the charged crime

beyond a reasonable doubt." <u>United States v. Vázquez-Soto</u>, 939 F.3d 365, 371 (1st Cir. 2019) (internal quotation marks omitted). The jury's verdict will stand if it "finds support in a plausible rendition of the record," as courts "need not believe that no verdict other than a guilty verdict could sensibly be reached." <u>United States v. Shaw</u>, 670 F.3d 360, 362 (1st Cir. 2012) (internal quotation marks omitted).

## III. Parties' Positions

### A. Pérez-Greaux

Pérez-Greaux offers three arguments for acquittal. (Docket No. 240.)  First, he "makes a general motion for judgment of acquittal."  <u>Id.</u> at p. 1.  He does this "to preserve all challenges to the sufficiency of the evidence for appeal."  <u>Id.</u>

Second, Pérez-Greaux argues that the government failed to prove the "in furtherance of" element in counts one and two. <u>Id.</u> at pp. 1, 4-5.  Pérez-Greaux argues that there was no direct proof of subjective intent to use the firearm in furtherance of a drug trafficking crime, so the jury had to infer such intent from objective factors.  <u>Id.</u> at p. 5.  With respect to objective factors, Pérez-Greaux contends that the firearm was not in close proximity to the drugs and was not easily accessible, noting that "the gun was wrapped in a rag, inside a paper bag, inside another paper bag, inside a plastic bag on the top shelf of the closet of

a room where no drugs were found or stored." Id. at pp. 4-5.  He
also points out that the firearm was unloaded and was being held
for someone else.  Id. at p. 5.

        Third,  Pérez-Greaux  argues  there  was  insufficient
evidence that he knew the firearm was a machinegun.  Id. at pp. 1-
2, 5.  According to Pérez-Greaux, to convict a defendant pursuant
to section 924(c)(1)(B)(ii), the government must prove knowledge
that the firearm was a machinegun.  Id.  Pérez-Greaux incorporates
his arguments set forth in Docket No. 229 to this effect.  Id.

        In Docket No. 229, Pérez-Greaux set forth a multi-part
argument.  Pérez-Greaux believes that, because the machinegun
language in section 924(c)(1)(B)(ii) is an element of the offense
rather than sentencing factor, a *mens rea* requirement must attach
to it unless a contrary legislative intent appears in the statute.
Id. at pp. 5-8.  Mere statutory silence on a *mens rea* requirement
does not imply the lack of such a requirement, Pérez-Greaux
asserts, pointing to the United States Supreme Court's observation
that "the existence of a *mens rea* is the rule of, rather than the
exception  to,  the  principles  of  Anglo-American  criminal
jurisprudence."  Id. at p. 7 (alteration and internal quotation
marks omitted) (quoting United States v. U.S. Gypsum Co., 438 U.S.
422, 436 (1978)).  Pérez-Greaux views a case contrary to his
position, United States v. Burwell, 690 F.3d 500, 511-13 (D.C.

Cir. 2012) (en banc), as erroneously relying on statutory silence,
(Docket No. 229 at p. 9.)  Pérez-Greaux further contends that his
reading of the statutory provision is supported by the First
Circuit Court of Appeals' holding that, to be convicted of
transferring or possessing a machinegun, "[t]he government
must . . . prove beyond a reasonable doubt that the defendant knew
the weapon had the characteristics that brought it within the
statutory definition of a machinegun." Id. at pp. 11–12 (quoting
United States v. Nieves-Castaño, 480 F.3d 597, 599 (1st Cir. 2007)
(internal quotation marks omitted)).   If the Court views the
statute as ambiguous on the *mens rea* requirement, Pérez-Greaux
asks the Court to apply the rule of lenity.  Id. at pp. 8–9.

B.   **Government**

The government disputes the three reasons for acquittal
offered by Pérez-Greaux.   (Docket No. 255.)   With respect to
whether Pérez-Greaux possessed controlled substances with an
intent to distribute, the government notes that his knowing
possession was proved both by Pérez-Greaux's own admissions and by
witness testimony to the effect that Pérez-Greaux entered the code
to open the safe in which the drugs were kept.  Id. at p. 11.  The
government also contends that his intent to distribute was proved
by the quantity of drugs being much higher than a personal use
quantity, by Pérez-Greaux's statements that he had engaged in drug

trafficking since March 2018, and by corroborating messages and
images on Pérez-Greaux's cellphone.  Id.

        The government also argues that there was sufficient
evidence to prove that Pérez-Greaux possessed the firearm "in
furtherance of" drug trafficking.  Id. at pp. 11-14.   The
government notes that the firearm was found in the same residence
as the drugs and drug trafficking supplies and in the same closet
as cardboard shipping boxes.  Id. at p. 13.   Meanwhile, the
government adds, a cardboard box with drug trafficking materials
was found in Pérez-Greaux's living room and an image of another
cardboard box addressed to the continental United States was found
in his cellphone.  Id. at p. 14.  The government also points out
that the firearm was unloaded but packed with sixty-six rounds of
ammunition and five magazines, including a high-capacity magazine.
Id.  Additionally, the government highlights, a police officer
testified that he saw Pérez-Greaux with a firearm of the same color
four days before the firearm seizure at Pérez-Greaux's residence.
Id. at p. 13.

        Finally, the government argues that it proved that
Pérez-Greaux possessed a machinegun in furtherance of a drug
trafficking crime.  Id. at pp. 14-15.  The government notes that
a firearms expert testified that the firearm was a machinegun.
Id.  According to the government, it was not necessary to prove

that Pérez-Greaux knew the firearm was a machinegun.  <u>Id.</u>  For

this legal argument, the government relies on <u>Burwell</u>, 690 F.3d at

503-08, and <u>United States v. Shea</u>, 150 F.3d 44, 52 (1st Cir. 1998).

(Docket No. 255 at p. 9.)  In <u>Shea</u>, the First Circuit Court of

Appeals rejected an argument that the semiautomatic assault weapon

provision of section 924(c) carries a *mens rea* requirement.  150

F.3d at 51-52.

## IV.  Discussion

### A.  Possession with Intent to Distribute Controlled Substances

#### 1.  Applicable Law

"In order to prove possession with intent to

distribute, the government must show that the defendants knowingly

and intentionally possessed, either actually or constructively, a

controlled substance with the specific intent to distribute."

<u>United States v. Ayala-Vázquez</u>, 751 F.3d 1, 12 (1st Cir. 2014)

(internal quotation marks omitted).  "Constructive possession

exists when a person knowingly has the power and intention at a

given time to exercise dominion and control over an object either

directly or through others."  <u>United States v. Apicelli</u>, 839 F.3d

75, 79 (1st Cir. 2016) (internal quotation marks omitted).

"[T]he requisite knowledge and intention can be

inferred from circumstances, such as a defendant's control over

the area where the contraband is found (e.g., defendant's home or
automobile)."  United States v. McLean, 409 F.3d 492, 501 (1st
Cir. 2005).  "But knowledge must be fairly inferable from the
circumstances."  Id.  "There must be some action, some word, or
some conduct that links the individual to the contraband and
indicates that he had some stake in it, some power over it."  Id.
(alteration and internal quotation marks omitted).

        To determine whether a defendant had an intent to
distribute drugs, the First Circuit Court of Appeals has identified
several factors to consider.  These include the amount of drugs,
drug purity, quantity of cash on a defendant, how the drugs were
packaged, the presence of drug paraphernalia, evidence showing the
defendant used the drugs seized, and the presence of firearms.
United States v. Fernández-Santos, 856 F.3d 10, 19 (1st Cir. 2017);
see also United States v. Flores-Rivera, 787 F.3d 1, 22 (1st Cir.
2015) (internal quotation marks omitted) ("[I]ntent to distribute
can be inferred from the quantity of drugs involved.").

        2.  **Analysis**

        The evidence was more than sufficient to show
possession of cocaine with intent to distribute.  With respect to
knowingly possessing the drugs, Pérez-Greaux told the law
enforcement officers where the drugs were located from the very
beginning.  (Docket No. 250 at p. 25.)  He knew it was cocaine

inside the safe because it was given to him by Alex, a person
Pérez-Greaux knew was a drug dealer. Id. at p. 14. Pérez-Greaux
opened the safe with a passcode. Id. at p. 56. These facts
sufficiently show Pérez-Greaux knowingly, intentionally, and
constructively possessed the cocaine. Apicelli, 839 F.3d at 79;
Ayala-Vázquez, 751 F.3d at 12; McLean, 409 F.3d at 501.

As for a specific intent to distribute, the
evidence showed that Pérez-Greaux told Miranda that he had been
working as a drug trafficker since March or April of 2018. (Docket
No. 250 at p. 18.) He explained his process for drug trafficking,
including the use of the mails. Id. And the law enforcement
officers found shipping boxes, one of which was addressed to Alex;
five cellphones; images of shipping receipts and packages;
inculpatory conversations; and a scale. (Docket No. 250 at pp. 18,
56, 63, 73, 75; Docket No. 251 at pp. 10–11, 16, 33, 52–70.)
Additionally, the cellphones contained corroborating evidence,
including images and contact information for a person identified
as "A" with a Rochester, New York area code. (Docket No. 251 at
pp. 51–70.) They also found a firearm. (Docket No. 250 at pp. 62,
70–71.) And, of course, the law enforcement officers recovered
three kilograms of a cocaine substance in brick form. Id. at
p. 56; Docket No. 251 at p. 33. And besides for that large
quantity of cocaine, there was no evidence adduced that Pérez-

Greaux used cocaine.   These facts sufficiently show a specific
intent to distribute the cocaine.   Fernández-Santos, 856 F.3d
at 19; Flores-Rivera, 787 F.3d at 22; Ayala-Vázquez, 751 F.3d
at 12.

### B.   Possession of a Firearm in Furtherance of Drug Trafficking

Section 924(c)(1)(A) of Title 18 of the United States
Code prohibits possession of a firearm in furtherance of a drug
trafficking crime.   18 U.S.C. § 924(c)(1)(A).   The statutory
provision has three elements: (1) knowing possession of a firearm
(2) in furtherance of (3) a drug-trafficking crime.   Id.; United
States v. Gonsalves, 859 F.3d 95, 111 (1st Cir. 2017) (delineating
the elements); United States v. Rodríguez, 735 F.3d 1, 7 (1st Cir.
2013) (same).   The Court will consider each element in turn.

#### 1.   Possession of a Firearm

##### i.   Applicable Law

The Court can consider whether a defendant had
constructive possession of a gun that is not physically on his
person.   United States v. Naranjo-Rosario, 871 F.3d 86, 94 (1st
Cir. 2017).   Similar to constructive possession of drugs, "[i]n
order to prove constructive possession, the government would have
to prove that [a defendant] 'knowingly [had] the power and the
intention at a given time of exercising dominion and control over

a firearm . . . directly or through others.'" Id. (second and third alterations in original) (quoting United States v. Wright, 968 F.2d 1393, 1398 (1st Cir. 1992)); see also Rodríguez-Martínez, 778 F.3d at 373 (internal quotation marks omitted) ("A finding of constructive possession requires a showing that the person knows (or has reason to know) that the firearm is within easy reach, so that he can take actual possession of it virtually at will."). "[O]wnership is not an element of the charge of possessing a gun in furtherance of a drug trafficking crime." Fernández-Santos, 856 F.3d at 20.

### ii.  Analysis

Pérez-Greaux knew there was a firearm in his residence.  (Docket No. 250 at pp. 15–17.)  He directed law enforcement officers to the location of the firearm. Id. at p. 26; Docket No. 251 at p. 16.  The firearm was in the closet of his children's bedroom in his residence.  (Docket No. 250 at p. 26; Docket No. 251 at p. 16.)  Although the firearm was at the top of the closet on top of a cardboard box or behind it, Pérez-Carrasco, a person who is five feet and six inches tall, only had a little trouble getting it and simply needed to raise his arm above his head to recover it.  (Docket No. 250 at pp. 62, 76; Docket No. 251 at p. 18.)  In addition, four days before the search, Rivera saw Pérez-Greaux with a weapon of the same color. Id. at pp. 36–37.

This is sufficient to show knowing, constructive possession of the firearm. <u>Naranjo-Rosario</u>, 871 F.3d at 94.  Pérez-Greaux may not have owned the gun, (Docket No. 250 at pp. 15-19,) but he still had constructive possession, <u>Fernández-Santos</u>, 856 F.3d at 20.

       2.   **"In Furtherance of"**

          i.   **Applicable Law**

          The "in furtherance of" element requires a showing that a firearm was used to advance or promote the drug crime.  Specifically, "[t]o satisfy the in-furtherance requirement, the government must establish 'a sufficient nexus between the firearm and the drug crime such that the firearm advances or promotes the drug crime.'" <u>United States v. Rodríguez-Torres</u>, 939 F.3d 16, 30 (1st Cir. 2019) (quoting <u>United States v. Gurka</u>, 605 F.3d 40, 44 (1st Cir. 2010)); <u>see</u> <u>Gonsalves</u>, 859 F.3d at 111.

          The nexus required by this element is not satisfied by just any link.  As Justice Souter makes clear, "the defendant must have possessed the gun in furtherance of his drug dealing, not merely in connection with his commission of a drug offense, but to advance or promote it." <u>United States v. González-Negrón</u>, 892 F.3d 485, 487 (1st Cir. 2018) (internal quotation marks omitted).  "The mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis . . . ." <u>United</u>

States v. Robinson, 473 F.3d 387, 399 (1st Cir. 2007) (internal quotation marks omitted).

Still, the First Circuit Court of Appeals "has shown considerable latitude" in determining that the element is satisfied." United States v. Bobadilla-Pagán, 747 F.3d 26, 35 (1st Cir. 2014). And that court has "[r]ecogniz[ed] that the in furtherance of element does not have a settled, inelastic definition." Id. (alteration and internal quotation marks omitted).

The First Circuit Court of Appeals analyzes the furtherance element from both objective and subjective standpoints. Id. "Evidence of subjective intent might include a showing that a defendant obtained a firearm to protect drugs or proceeds." Id. "Where direct evidence of subjective intent is lacking, the jury may infer intent from the objective circumstances." Id. "Objective factors the court considers include: (1) the proximity of the firearm to drugs or contraband; (2) whether the firearm was easily accessible; (3) whether the firearm was loaded; and (4) the surrounding circumstances." Id. "Possession of a firearm to protect drugs or sales proceeds can constitute possession in furtherance of a drug trafficking crime." United States v. Alverio-Meléndez, 640 F.3d 412, 420 (1st Cir. 2011) (internal quotation marks omitted).

Some cases involve facts for which it is relatively easy to find the "in furtherance of" element satisfied. For instance, in United States v. Ayala-García, 574 F.3d 5, 16 (1st Cir. 2009), "ample circumstantial support" for the inference that a firearm was used for protection came by way of facts showing that a vehicle used for drug trafficking had a loaded AK-47, drugs, and money. Essentially the same conclusion was reached in United States v. Bristol-Mártir, 570 F.3d 29, 41 (1st Cir. 2009) (internal quotation marks omitted), where a police officer "used his status as a police officer, which includes the fact that he carries a gun, in order to protect the drug transaction in which he engaged."

Other cases, however, present more difficulty in ascertaining whether evidence sufficiently proved the "in furtherance of" element. These cases, some of which are reviewed below, are useful here because they elucidate the requisite threshold to satisfy the "in furtherance of" element.

In González-Negrón, 892 F.3d at 487, Justice Souter reviewed for plain error a case where "the defendant's gun was found in the bedroom closet of his apartment, and his stash of drugs was hidden in the kitchen." If these were the only relevant facts, Justice Souter noted, there would be "serious argument" as to whether the district court erred in accepting a guilty plea. Id.

The González-Negrón case, however, involved other facts.  The defendant was a drug dealer.  Id.  And the firearm was a machinegun.  Id.  Justice Souter considered those fact in tandem, and since it is generally illegal to possess a machinegun for any reason, Justice Souter found support for the likelihood that the actual purpose of possessing the firearm was to promote drug dealing.  Id.  He also found support for that conclusion from the facts that the gun was loaded and was kept in the same residence as the drugs.  Id.  In sum, Justice Souter said those facts

> are at least arguably sufficient to satisfy the
> requirement of demonstrating on the record a factual
> basis for the "in furtherance" element as required under
> Rule 11.  If there is thought to be any inadequacy on
> this point, it did not amount to error that could be
> treated as plain.

Id. at 488.

Another case presenting a "close question" is Bobadilla-Pagán, 747 F.3d at 36.  There, the government offered testimony that the firearm was found in Bobadilla's van within three feet of marijuana; both the firearm and the drugs could be reached at the same time; the gun held three rounds; Bobadilla did not have a license for the gun; and Bobadilla "gave shaky testimony about how he acquired it—he said he was holding it for a friend, but he provided little other information about the circumstances."

Id.  Bobadilla also told law enforcement officers that the gun was
for protection, a statement corroborated by other testimony that
drug traffickers sometimes use firearms for protection.  Id.  By
contrast, Bobadilla argued that the evidence only indicated the
presence of a firearm in the same place as drugs, no other evidence
related to drug trafficking was found in the van, no evidence
showed that he used or carried the gun, and the gun was only
partially loaded.  Id.

The Bobadilla-Pagán court explained that
"Bobadilla's explanation is plausible, but it does not overcome
the extremely high bar set for a sufficiency challenge."  Id.  A
reasonable jury could conclude that Bobadilla possessed the gun in
furtherance of a drug trafficking offense, the court held, and
rejected the sufficiency challenge.  Id. at 36–37.

In United States v. Grace, 367 F.3d 29, 35–36
(1st Cir. 2004), the court determined that there was sufficient
evidence that Grace possessed a firearm to protect her drug supply
and the proceeds of her drug sales.  The defendant conducted drug
sales in her kitchen, stored drugs and proceeds in her computer
room, and kept electronic scales and a handgun in her bedroom.
Id. at 31.  "The handgun was found unloaded in a plastic bag in a
drawer under her bed.  The drawer was blocked by a duffel bag, a

trash can, and a box of books.   The police did not find any ammunition in the house."   Id.

According to Grace, the handgun had nothing to do with her drug trafficking.   Id. at 32.   She said she bought the gun because her home had been burglarized and because she lived alone in the country with her daughter.   Id.

The court held there was sufficient evidence to satisfy the "in furtherance of" element.   Id. at 36.   The factfinder was entitled "to conclude that she purchased the handgun specifically to prevent such robberies of drugs and drug proceeds in the future."   Id.   This conclusion was supported by testimony that drugs were stolen during the robberies, she kept drugs and thousands of dollars in other rooms of the house, and she believed one of her drug suppliers committed the burglaries.   Id.   The court also noted "that a gun does not even have to be operational, let alone loaded, to qualify as a firearm for section 924 purposes." Id.

### ii.  Analysis

The firearm was located in the same residence as the drugs.  (Docket No. 250 at pp. 55–56, 62.)  Mere co-presence is not enough to sustain the conviction.   González-Negrón, 892 F.3d at 487; Robinson, 473 F.3d at 399.

Defendant argues that some facts weigh towards acquittal.  For instance, the firearm was not loaded, and the ammunition magazines were empty.  (Docket No. 251 at p. 20.)  It was also wrapped in a cloth within two paper bags, all of which was inside a plastic bag.  Id. at pp. 18–20.

Other objective factors, however, tip the scale into sufficient evidence to sustain the conviction.  The residence was used by Pérez-Greaux for his drug trafficking activities; he safekept drugs there and packaged them for shipping. (Docket No. 250 at pp. 18, 55–56.)  So, the jury could infer that the firearm was possessed and in the residence for protection of that activity.  Alverio-Meléndez, 640 F.3d at 420; Grace, 367 F.3d at 35–36.  In addition, the firearm was stored in a closet with the type of boxes that Pérez-Greaux used for shipping drugs. (Docket No. 250 at p. 62; Docket No. 251 at pp. 10–11.)  Thus, the firearm was kept in close proximity to items the jury could have considered as part of Pérez-Greaux's drug trafficking.  Bobadilla-Pagán, 747 F.3d at 35.  And Pérez-Carrasco only had a little trouble getting the firearm and simply needed to raise his arm above his head to recover it, (Docket No. 250 at pp. 62, 76; Docket No. 251 at p. 18,) supporting a finding that the firearm was easily accessible, Bobadilla-Pagán, 747 F.3d at 35.

There is another surrounding circumstance which supports the jury's verdict. According to Pérez-Greaux, he received the gun from Alex a few days before the June 5 search. (Docket No. 250 at pp. 15–16.) Is this a mere connection between the firearm and the drug trafficking insufficient to sustain the conviction? See González-Negrón, 892 F.3d at 487. The jury might have reasonably believed so. But a reasonable jury could also have viewed Pérez-Greaux's taking possession of the firearm from Alex as advancing or promoting the drug trafficking. Alex, after all, was the person to whom Pérez-Greaux sent the drugs. (Docket No. 250 at p. 20.) Alex gave the firearm to Pérez-Greaux at the same time as he gave him three kilos of cocaine. Id. at pp. 15–16. Pérez-Greaux took possession of the drugs and firearm in Isla Verde, but he lived in Arecibo. (Docket No. 250 at pp. 15–16, 31, 54.) The firearm, a reasonable jury could infer, thus helped Pérez-Greaux protect the drugs on his way home, even if it was unloaded and bagged at the time. Grace, 367 F.3d at 35–36.

On review of a Rule 29 motion for acquittal, this Court views the evidence "in the light most favorable to the prosecution." Lara, 181 F.3d at 200. It would not be "unreasonable, insupportable, or overly speculative," Rodríguez-Martínez, 778 F.3d at 371, to view the evidence as supporting the notion that Pérez-Greaux possessed the firearm to protect himself

and the drugs either en route to his house or while at the house,
Bobadilla-Pagán, 747 F.3d at 35, Alverio-Meléndez, 640 F.3d at
420; Grace, 367 F.3d at 35-36.

        Pérez-Greaux puts a lot of weight into the
notion that the firearm was wrapped in a few bags, unloaded, and
stored in a separate room from the drugs.  (Docket No. 240 at
pp. 4-5.)  Essentially the same conditions, however, were present
in Grace, 367 F.3d at 31, and the court there found sufficient
evidence to sustain the conviction, id. at 35-36.  Moreover, the
proximity of the firearm to contraband, its ease of access, and
its operational characteristics are only some of the relevant
factors, Bobadilla-Pagán, 747 F.3d at 35, and for the reasons
discussed above the evidence relevant to other factors is
sufficient to sustain the conviction.

        **3.    Drug Trafficking Crime**

        As discussed above, there is sufficient evidence
that Pérez-Greaux engaged in a drug trafficking crime.

        **4.    Synthesis**

        These was sufficient evidence on the three elements
of 18 U.S.C. section 924(c)(1)(A).  Therefore, the defendant's
protestations to his conviction on this charge fail.

### C.  Possession of a Machinegun in Furtherance of Drug Trafficking

Congress requires courts to impose a mandatory minimum sentence of thirty years imprisonment if a person possesses a particular type of firearm—a machinegun—in furtherance of a drug trafficking crime.  18 U.S.C. § 924(c)(1)(B)(ii).  A machinegun is defined in the statute as, among other things, "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger."  Id. § 921(a)(23); 26 U.S.C. § 5845(b).

Resolution of Pérez-Greaux's challenge to his conviction on this charge comes down to a legal question:  must a defendant know the firearm in question is a machinegun?  The parties dispute this legal question.  (Docket No. 240 at pp. 1-2, 5; Docket No. 255 at pp. 9, 14-15.)  The government does not dispute Pérez-Greaux's factual contention, namely, that the evidence was insufficient to show he knew the firearm was a machinegun.  (Docket No. 255 at pp. 9, 14-15.)  Thus, if a defendant must know the firearm is a machinegun, the government appears to concede that acquittal is appropriate.  Conversely, if no such knowledge is required, it matters not whether the evidence showed Pérez-Greaux knew he possessed a machinegun in furtherance of his drug trafficking.

### 1.  Applicable Law

The statutory provisions at issue, 18 U.S.C. sections 924(c)(1)(A) and 924(c)(1)(B)(ii), do not express specify whether a defendant must know that the firearm is a machinegun. Consequently, the Court must determine whether Congress implicitly intended to incorporate a *mens rea* requirement on the nature of the firearm.  See Staples v. United States, 511 U.S. 600, 604–05 (1994).

The United States Supreme Court has not directly addressed this question.  In United States v. O'Brien, 560 U.S. 218, 222 (2010), the United States Supreme Court expressly left the question unresolved.

The United States Supreme Court has addressed other aspects of section 924(c)(1)(B)(ii) in recent decades.  In Castillo v. United States, 530 U.S. 120, 121 (2000), the United States Supreme Court held that the statutory term "machinegun" is an element of an offense rather than a sentencing factor.  After Congress made changes to section 924, the O'Brien Court reached the same result.  560 U.S. at 235.

As this Court reads the caselaw, the First Circuit Court of Appeals has also not determined whether a defendant must know that a firearm is a machinegun to be convicted pursuant to section 924(c)(1)(B)(ii).  No party cites a controlling case.

Three cases identified by the Court are of interest, but none resolves the issue.

In United States v. O'Brien, 542 F.3d 921, 922 (1st Cir. 2008), the court considered "whether, under a statute forbidding the carrying and use of guns in connection with a federal crime, the nature of the weapon is to be found by the judge as a sentencing matter or by the jury as an element of the crime." This is the same issue as considered in Castillo, 530 U.S. at 121, and the United States Supreme Court's affirmance of the First Circuit Court of Appeals' decision in O'Brien, 560 U.S. at 235. It is not the same issue presently before the Court.

It seems that proof of knowledge of the firearm's characteristics was at issue at some point during the proceedings in O'Brien. After the district court in O'Brien "ruled that machine-gun possession was an element of a crime rather than a sentencing enhancement," the government asked for dismissal of the count charging possession of a machinegun in furtherance of a crime of violence. 542 F.3d at 923. Apparently, "the government concluded that it could not prove beyond a reasonable doubt the defendants' knowledge that the [firearm] had been modified to operate automatically." Id. Then, at sentencing, the government asked the district court to impose the thirty-year mandatory minimum sentence "on the ground that the district court could find

the necessary facts as to possession of a machine-gun by a preponderance of the evidence and without requiring the defendants to know that the weapon was automatic." Id.  The district court refused and the government appealed.  Id.

The First Circuit Court of Appeals then proceeded to examine whether the machinegun provision was an element of an offense or a sentencing enhancement.  Id. at 923-26.  The First Circuit Court of Appeals found the United States Supreme Court's opinion in Castillo "close to binding" and, following the high court, affirmed the district court.  Id. at 926.  And having limited itself to ruling on the question of whether the provision was an element or a sentencing enhancement, the First Circuit Court of Appeals did not rule on the *mens rea* requirement associated with the provision.  See id. at 923-26.  As such, like the United States Supreme Court did when the case came before it, the First Circuit Court of Appeals' decision in O'Brien left open the question now before this Court.

A few months later, the First Circuit Court of Appeals decided United States v. Rivera-Rivera, 555 F.3d 277 (1st Cir. 2009).  In a footnote, the Rivera-Rivera court pointed to its O'Brien decision and stated that "[i]n analyzing a provision relating to machine guns, § 924(c)(1)(B)(ii), we recently concluded that knowing possession of a machine gun is an element

of the crime that must be proven to the jury."  Id. at 291 n.14
(citing O'Brien, 542 F.3d 921).

        The import of the Rivera-Rivera footnote is not
immediately clear.  In characterizing the O'Brien decision as
"conclud[ing] that knowing possession of a machine gun is an
element of the crime," was the Rivera-Rivera court putting a gloss
on the O'Brien decision to the effect that the government must
prove a defendant knew the firearm was a machinegun to convict
pursuant to section 924(c)(1)(B)(ii)?  Alternatively, was the word
"knowing" in the Rivera-Rivera footnote only intended to modify
the word "possession"?

        This Court need not resolve that ambiguity because
the Rivera-Rivera footnote was *dictum*.  "Dictum constitutes
neither the law of the case nor the stuff of binding precedent;
rather, it comprises observations in a judicial opinion or order
that are not essential to the determination of the legal questions
then before the court."  Arcam Pharm. Corp. v. Faria, 513 F.3d 1,
3 (1st Cir. 2007) (citation omitted).  As the Rivera-Rivera court
noted in the same footnote, "[i]n this case, . . . the appellants
do not make any allegations regarding the possession of a machine
gun."  Rivera-Rivera, 555 F.3d at 291 n.14.  Instead, the
appellants in Rivera-Rivera were challenging whether the fact of
a prior conviction is a sentencing enhancement.  Id.  So the

statement about O'Brien's conclusion was merely an observation not
essential to the determination of the legal questions before the
Rivera-Rivera court.

The third case of interest is United States v.
Laureano-Pérez, 797 F.3d 45, 74–76 (1st Cir. 2015). There, a
defendant challenged his conviction for illegal possession of a
machinegun and his conviction for possession of firearms
(including machineguns) in furtherance of a drug trafficking
crime. Id. at 74. That defendant argued the evidence was
insufficient to establish his knowledge that the firearms were
machineguns. Id. The Laureano-Pérez court reviewed the evidence
and found sufficient evidence that the defendant knew the firearms
were machineguns. Id. at 74–76.

The decision in Laureano-Pérez does not resolve
whether a defendant must know that a firearm is a machinegun to be
convicted pursuant to section 924(c)(1)(B)(ii). As this Court
reads the opinion, the Laureano-Pérez court merely assumed that
such knowledge was required. The Laureano-Pérez court never
grappled with the issue now before the Court. The issue was hardly
contested, having been mentioned for the first time almost as an
afterthought in the defendant's reply brief. Reply Brief for
Appellant at 9–10, United States v. Laureano-Pérez, 797 F.3d 45
(1st Cir. 2015) (No. 13-2276), 2015 WL 605489, at *9–10. Courts

and commentators have explained that uncontested issues summarily addressed in a case are not controlling precedent. United States v. Hemingway, 734 F.3d 323, 335 (4th Cir. 2013); State v. Brown, 930 N.W.2d 840, 911 (Iowa 2019) (Appel, J., dissenting); Charles W. Collier, Precedent and Legal Authority: A Critical History, 1988 Wis. L. Rev. 771, 781-82 n.44 (1988). Moreover, the Laureano-Pérez court cited no authority holding that section 924(c)(1)(B)(ii) requires the government to prove knowledge that the firearm was a machinegun. Meanwhile, the Laureano-Pérez court recognized that a conviction for illegal possession of a machinegun required knowledge that a firearm was a machinegun, so the court would in any event be undertaking the inquiry. Id. at 74-75 (citing Nieves-Castaño, 480 F.3d at 599). Pursuant to this Court's reading of the decision, the Laureano-Pérez court held that, if knowledge is required to convict pursuant to section 924(c)(1)(b)(ii), the evidence was sufficient. Other courts have taken a similar approach. See, e.g., United States v. Franklin, 321 F.3d 1231, 1240 (9th Cir. 2003); United States v. Rodríguez, 54 F. App'x 739, 747 (3d Cir. 2002); United States v. Dixon, 273 F.3d 636, 640-41 (5th Cir. 2001).

        Other courts have addressed the issue at hand. Two circuit courts of appeal have held that the statute does not require knowledge of a firearm's characteristics. Burwell, 690

F.3d at 504; United States v. Haile, 685 F.3d 1211, 1218 (11th
Cir. 2012). District courts, including one in this district, have
reached the same conclusion. See, e.g., Gómez-Ortiz v. United
States, 130 F. Supp. 3d 523, 531-32 (D.P.R. 2015) (Fusté, J.);
United States v. Ross, Civ. No. 10-4309, 2013 WL 5873375, at *5-8
(E.D. Pa. Nov. 1, 2013), vacated on other grounds, 801 F.3d 374
(3d Cir. 2015); Gregory v. United States, Civ. No. 10-124, 2013 WL
5350621, at *14 (E.D. Tenn. Sep. 23, 2013). At least one court
has held that the statute requires the defendant to know that the
firearm is a machinegun. Ruiz v. United States, 146 F. Supp. 3d
726, 732 (D. Md. 2015).

In Burwell, the D.C. Circuit Court of Appeals
addressed the issue en banc. 690 F.3d at 502. The issue before
the court was whether to depart from an earlier panel decision
holding that knowledge of the firearm's characteristics is
unnecessary for conviction pursuant to an earlier version of
section 924(c)(1)(B)(ii). Id. at 503-04; see United States v.
Harris, 959 F.2d 246, 258-59 (D.C. Cir. 1992). A majority of the
judges in Burwell joined an opinion by Judge Brown holding that
the court would not depart from its earlier decision. 690 F.3d at
504.

The Burwell majority highlighted the proof of mens
rea required to convict pursuant to sections 924(c)(1)(A) and

924(c)(1)(B)(ii).  Id. at 507–08, 514.  The Burwell majority
emphasized that, to convict a defendant of possessing a machinegun
in furtherance of a drug crime, the government must prove that a
defendant both committed a drug trafficking offense and
intentionally possessed a firearm in furtherance of that offense.
Id. at 507.  The omission of an additional *mens rea* requirement
associated with the machinegun element, then, would not risk
"ensnaring an altar boy." Id. (internal quotation marks omitted).
This mode of analysis, the Burwell majority explained, was
developed by the United States Supreme Court in a line of cases
holding that proof of *mens rea* is required where necessary to
differentiate criminal violations from otherwise lawful conduct.
Id. at 505–07 (citing United States v. X-Citement Video, Inc., 513
U.S. 64, 69, 72 (1994); Staples, 511 U.S. at 605; U.S. Gypsum, 438
U.S. at 440–42).

        The Burwell majority also considered textual
aspects of section 924.  According to the Burwell majority, by
providing that the machinegun penalty is triggered when the firearm
"is" a machinegun, Congress intended to omit a *mens rea* requirement
applicable to the machinegun provision.  Id. at 511–12.  Moreover,
the Burwell majority noted that Congress defined another part of
section 924—the "brandishing" provision—to include a *mens rea*
requirement, so the omission of a *mens rea* requirement applicable

to the machinegun provision could be presumed intentional.  <u>Id.</u>
at 512.

        The <u>Burwell</u> majority further reasoned, among other
things, that proof of *mens rea* is not required merely because a
statutory phrase constitutes an offense element as opposed to a
sentencing factor.  <u>Id.</u> at 505.  The <u>Burwell</u> majority additionally
observed that it is not unusual to hold a defendant criminally
liable for the unintended consequences of unlawful acts.  <u>Id.</u>
at 507.

        The <u>Burwell</u> majority also distinguished the United
States Supreme Court's decision in <u>Flores-Figueroa v. United</u>
<u>States</u>, 556 U.S. 646 (2009).  <u>Burwell</u>, 690 F.3d at 512, 515–16.
That decision is inapplicable to section 924, the <u>Burwell</u> majority
explained, because in <u>Flores-Figueroa</u> the statute included the
word "knowingly" and the issue was which statutory elements were
affected by that *mens rea* requirement.  <u>Id.</u> at 512.  By contrast,
sections 924(c)(1)(A) and 924(c)(1)(B)(ii) do not contain an
express *mens rea* requirement.  The <u>Burwell</u> majority refused to
"imply a *mens rea* requirement where none was meant to exist, in
the service of an assertedly strong 'traditional presumption of
mens rea' applicable to every element of an offense." <u>Id.</u> at 516.

        The reasoning of the <u>Burwell</u> majority generally
comports with decisions of the First Circuit Court of Appeals.

Recall that, in Shea, the First Circuit Court of Appeals rejected
an argument that the semiautomatic assault weapon provision of
section 924(c) carries a *mens rea* requirement.   150 F.3d at 51-
52.  The Shea court distinguished the United States Supreme Court's
holding in Staples because, unlike in Staples, the semiautomatic
assault weapon provision does not risk criminalizing a broad range
of innocent conduct in the absence of a *mens rea* requirement, as
a defendant would necessarily have "demonstrated a vicious will by
committing the principal offense."   Id. at 52 (internal quotation
marks omitted).    The   Shea   court   also   reasoned   that   the
semiautomatic assault weapon provision in section 924(c) was a
sentencing factor based on the language and structure of the
statute and the legislative history.   Id.  The latter reasoning is
no longer good law, United States v. Mojica-Báez, 229 F.3d 292,
306-07 (1st Cir. 2000),[1] and does not fit with Burwell.

         Another  decision  of  the  First  Circuit  Court  of
Appeals generally comporting with Burwell involves an analogous
statute.   In United States v. Collazo-Aponte, 281 F.3d 320, 325-
26 (1st Cir. 2002), the court considered whether 21 U.S.C. section

---

[1] The government, without any case citation, says that Shea was abrogated on
other grounds.  (Docket No. 255 at p. 9.)  In Mojica-Báez, 229 F.3d at 306-07,
the First Circuit Court of Appeals recognized that the semiautomatic assault
weapon provision of section 924(c) is not a sentencing factor.   While Mojica-
Báez does not obliterate the persuasive value of Shea on the question before
the Court, it is inaccurate to say that Shea was abrogated "on other grounds"
because the Mojica-Báez court removed one of the bases for the holding in Shea.

841(b) requires a defendant to know the specific quantity of cocaine involved in an offense. Section 841 has a statutory structure similar to that of section 924(c)—section 841(a) prohibits distribution of cocaine and section 841(b) specifies greater penalties for greater quantities of drugs distributed. Compare 18 U.S.C. § 924(c), with 21 U.S.C. § 841(a)-(b).

The Collazo-Aponte court held that knowledge of drug quantity is not required for a conviction pursuant to section 841(b). 281 F.3d at 326. The Collazo-Aponte court observed that the statutory language "requires the government to prove only that the offense 'involved' a particular type and quantity of drug, not that the defendant knew that he was distributing that particular drug type and quantity." Id. (quoting 21 U.S.C. § 841(b)). The Collazo-Aponte court further noted that drug quantity is not an element that would criminalize otherwise innocent behavior, as someone "is guilty whether he conspired to sell 30 kilos of heroin or 30,000." Id.

This Court agrees with and adopts the reasoning of the Burwell majority summarized above. This reasoning is especially persuasive in light of the First Circuit Court of Appeals' analogous decisions in Shea and Collazo-Aponte. Therefore, the Court holds that sections 924(c)(1)(A) and

Criminal No. 18-389 (FAB)                                                    39

924(c)(1)(B)(ii) do not require for conviction knowledge that a firearm is a machinegun.

The firearm was a machinegun. (Docket No. 251 at pp. 25-26.) It was modified to fire automatically. Id. at p. 26. Jeffrey T. Browder, a firearms expert, was able to identify that the firearm was a machinegun by looking at it. Id. at pp. 24-30.

### 2.    Analysis

The evidence before the jury included testimony that the firearm in question was modified to fire automatically. (Docket No. 251 at pp. 24-30.) The firearms expert could tell it was a machinegun by looking at it. Id. That is sufficient evidence to satisfy the machinegun element of section 924(c)(1)(B)(ii). And since there was sufficient evidence for the other elements (as discussed above), Pérez-Greaux's challenge to his conviction on this charge fails too.

## V.   Conclusion

For the reasons set forth above, Pérez-Greaux's motion for judgment of acquittal, (Docket No. 240,) is **DENIED**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, April 14, 2020.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE